14958. GILLIS *v.* ESTROFF.

1. Without the testimony of the defendant, there is no evidence to support the verdict in his favor; and, under the rule that where a party's testimony bears two constructions, is self-contradictory, vague, or equivocal, the construction less favorable to his interest should be adopted, it is, under the facts of this case, doubtful whether the verdict has any evidence to support it. *Steele* v. *Central of Ga. Ry. Co.*, 123 *Ga.* 237 (51 S. E. 438); *Twyman* v. *Avera Loan & Investment Co.*, 23 *Ga. App.* 136 (98 S. E. 239).

2. Grounds of a motion for a new trial complaining of the exclusion of testimony will not be considered by this court, unless the proffered testimony is set out therein or annexed thereto · as an exhibit, nor unless the name of the witness by whom such proof was offered is shown. See Park's Code, § 6083, annotations.

3. Under the facts of this case the court erred in charging the jury as follows: "To constitute a partnership, there must be an agreement

between the parties; each partner must contribute something of value to the partnership; each must share in the losses of the partnership, if there are any losses; and, of course, each must enjoy the profits. It takes those three things to constitute a partnership. An agreement to share in the profits alone would not constitute a partnership." However correct or incorrect such a charge might be as applied to a transaction between an alleged partnership and a third person, yet as among the partners themselves "a partnership . . may arise from a joint ownership, use, and enjoyment of the profits of undivided property" (Civil Code of 1910, § 3155), and "liability for losses will generally be implied from proof that the contract stipulates for a division of the profits, and a sharing of the profits may imply a partnership." *Davis* v. *Savannah Lumber Co.*, 11 *Ga. App.* 610 (4) (75 S. E. 986). Construed in the light of the whole charge, and particularly of the other excerpts complained of, the jury were instructed that they must either find from the evidence that the plaintiff and the defendant expressly agreed, at the time of the transaction, that both should be equally liable for any losses resulting from the venture, or else they should find in favor of the defendant. So construed, the charge was not only error, but, under the facts of this case, amounted virtually to the direction of a verdict for the defendant.

4. The court repeatedly charged, and illustrated the defendant's contention, as to plaintiff's failure to invest any money or other thing of value in the alleged venture, without anywhere instructing the jury that the plaintiff's abandonment of a $700 profit in another transaction, or the expenditure by him of time and money in the particular transaction, might constitute a sufficient consideration to uphold the contract. *Rouse* v. *State*, 2 *Ga. App.* 184 (4-6) (58 S. E. 416).

5. The other alleged errors in the charge are such as, in view of the foregoing rulings, will not likely recur upon another trial of the case. Because of the errors in the charge, the court erred in overruling plaintiff's motion for a new trial.

                    DECIDED JANUARY 15, 1924.

Complaint; from city court of Soperton—Judge Wallace. July 30, 1923.

*Dallam R. Jackson, N. L. Gillis Jr., George B. Davis,* for plaintiff.

*Saffold & Stallings,* for defendant.

LUKE, J. This case arose as a suit by Gillis against Estroff, making, in brief, the following case: On June 10, 1919, plaintiff and defendant jointly purchased, for the purpose of resale and division of profits, 134 bales of cotton, 84 bales (44,423 pounds) from one person at 30½ cents, 50 bales (24,905 pounds) from another person at 31 cents per pound. Estroff shipped the cotton to Savannah in his own name, and not in their joint names, claiming that by so doing "he could have a friend handle same to a

better advantage for him personally, and that he would divide the profits with petitioner as shown above." On March 1, 1920, Estroff sold the cotton "through or to Gordon-Smart Company .. at and for a net profit, after all expenses of handling of same had been deducted, of $3,068.80, one half of which said profit belongs to petitioner." The petition further alleges demand upon Estroff for payment of plaintiff's claimed share of the profits, and that he refused to pay the same or any part thereof. Estroff, in his answer, denied the several paragraphs of the plaintiff's petition, and further alleged "that there was no copartnership existing between plaintiff and himself, and that, if in point of fact he purchased the cotton described in plaintiff's petition, he bought it as an individual, and not jointly with the plaintiff, and that plaintiff at no time invested any money in said cotton nor had any interest in the same."

Upon the trial the defendant was sworn as a witness for the plaintiff, the only evidence introduced by him after plaintiff had rested being the two checks given by him in payment of the purchase price of the cotton in question. Gillis testified, in brief, as follows: Both he and Estroff were cotton buyers, but neither had enough money to finance the purchase of the two lots of cotton. (The sum of $21,269.56 was necessary for that purpose.) Whether they should buy it jointly or separately, the plan of each, at the time of the purchase, was, first, to negotiate a purchase, then negotiate a sale, ship the cotton to such purchaser as they might locate, draw upon him with bill of lading attached, and deposit the draft in bank to meet the checks given in paying for the cotton bought. Gillis had negotiated for the purchase of the cotton, and for a resale to one Rogers at a profit of $700, before Estroff came upon the scene. By showing Gillis where they could make $1000 more selling to a Savannah buyer, Estroff induced Gillis to obtain a release from Rogers, which was done by long-distance telephone. Immediately Estroff wanted to ship the cotton to Savannah in his individual name; but, upon Gillis' protest and insistence that it be shipped in their joint names, it was so agreed. Estroff nevertheless obtained the bill of lading in his own name, drawing upon Gordon-Smart Company for the bill of lading attached, depositing the draft in the Bank of Soperton, and then drawing his individual checks on that bank to pay for the cotton.

The checks, reaching the bank ahead of the draft, were at first dishonored, but were paid after the deposit of the draft with bill of lading attached. As soon as Gillis learned that the cotton was shipped in the name of Estroff individually, he protested; but, upon Estroff's assurance that the profits would be divided equally, and that by so shipping it a better price could be obtained through one of Estroff's associates, Gillis assented to the arrangement. Cotton was then advancing in price, and Estroff wanted to hold for a higher price instead of letting their sale go through. Gillis would not agree, because of the risk of having to put up margins if the market price should fall. Upon Estroff saying, "I'll put up the margin; it won't cost you a cent," Gillis agreed. Estroff afterwards told Gillis that he had sold the cotton for a profit of "about $3,000." The only things actually invested by Gillis in the transaction were his time, labor, expense, cost of weighing the cotton, and the withdrawal of his profitable trade with Rogers. Gillis was corroborated by Rogers as to the sale of the cotton to him, and by the railway company's agent at Scott, Ga., the shipping point, as to the bill of lading and the conversation between plaintiff and defendant respecting how it should be issued.

The defendant, Estroff, was then sworn as a witness for the plaintiff, and, upon direct examination, gave this, and only this, information: "I am the defendant in this case. I shipped the two shipments of cotton that is in question here to Savannah. I drew a draft on it on Gordon-Smart Company. I don't know who issued those account sales. I don't know whether or not they bear their name. I don't know anything about the account sales. I couldn't deny that those account sales are true and correct copies of the ones I received from Gordon-Smart Company, and I couldn't affirm it. I don't know whether I made something over $3,000 on this cotton or not. I might have, or I might have not. I don't know. I shipped two shipments of cotton from Scott, Ga. I don't know their marks. I don't know whether those are the bills of lading or not. I don't remember how many bales there was in each lot or shipment. I don't remember what the eighty-four bale lot was marked. I don't remember what the fifty-bale shipment was marked. I don't remember whether I shipped any other cotton except the eighty-four bale lot and the fifty-bale lot in June, 1919. I delivered some cotton to Gordon-Smart Company, but I don't remember whether

the cotton I delivered to them was marked 'SS' and 'ES' or not. I don't remember about that. It might have been or it might have not. I don't remember." Q. "You received the original account sale of this cotton?" A. "Well, I have received a good many. I can't remember forty years back." (This was on April 3, 1923, and there was a mistrial of the case on January 25, 1923.) "Sometimes they send the original account sales to me, and sometimes they do not. Mr. Gillis never asked me for the account sales. He didn't have any more cotton than you did." Q. "Who bought this cotton when it was first bought?" A. "Gillis. He didn't buy it. He didn't put any money in it, but he claimed he bought the cotton. He claimed he bought the cotton. I did not say in the trial of this case before that I agreed to buy this cotton, and that I was to receive one fourth profits and Mr. Gillis the other. If I did, you misunderstood me on that. I have not paid Mr. Gillis any of the profits of this cotton. He is not entitled to any. He didn't have any cotton." Cross-examined by his own counsel his further testimony was: "When I say that Gillis had bought this cotton I mean that he made an offer to buy it, the eighty-four bale lot and the fifty-bale lot."

Plaintiff then introduced in evidence the account sales from Gordon-Smart Company to Estroff, dated November 3, 1919, and showing net proceeds, after the usual deductions for freight, commissions, insurance, etc., in the sum of $24,338.36, for the two lots of cotton, thereby showing a net profit of $3,068.80, as alleged in plaintiff's petition. With that the plaintiff rested; and the defendant, recalled for further cross-examination in his own behalf, came with a refreshed memory, testifying substantially as follows:. He bought the cotton, paid for it, and sold it through his factor in Savannah, acting individually for himself in it all, and Gillis had nothing to do with it. He never promised Gillis a division of the profits, Gillis never demanded any such division; and if the transaction had resulted in a loss, he would not have called on Gillis to share that. Gillis did first buy the cotton and sold it to one Walpert, who failed to accept and pay for it, and, after much insistence by Gillis and reluctance on the part of Estroff, the latter proposed that each pay one half the purchase and buy it together, but Gillis refused. Estroff then gave his individual checks for it (which he put in evidence) and directed Gillis to sell it to the

Dixie Company, or make it and do something with it. What Gillis did, if anything, under those instructions, remains untold, but he (Estroff) then shipped the cotton to Savannah, stored it, and borrowed 24 cents per pound on it. Three weeks later his Savannah factor called on him for $2,000 margin; and he testified: "I told Gillis that if he wanted to be partners with me, now he could do it by helping me margin it. I told him that he could put up half of the margin and I would put up half, and he wouldn't do it, said he wouldn't have anything further to do with it, and I had to margin it myself." On redirect examination by plaintiff's counsel he said: "I testified on the former trial that me and Gillis was to divide the profits, and that Walpert was to come from Savannah and buy the cotton. Yes, Gillis and me were to divide the profits. He was to give me half, and not a fourth, if the trade with Walpert went through. I testified on the former trial that at the time I shipped the cotton from Scott I had a loss of about two cents per pound. That is still true. Yes, I say that Gillis didn't have anything in the cotton; he hasn't bought any cotton; I bought the cotton and paid for it myself . . I told Gillis, after the cotton reached Savannah, that if he wanted to be a partner he would have to put up some money. I told him that he couldn't be a partner unless he put up some money."

Under that evidence and the charge of the court the jury returned a verdict in favor of the defendant. Plaintiff moved for a new trial, making numerous exceptions to the charge of the court and to rulings in the admission and exclusion of evidence. The motion was overruled and he excepted.

1-5. With this statement of the facts, the opinion of the court, as given in the headnotes, needs no further elaboration. Whether the alleged contract amounted to a technical partnership agreement or not is of little consequence. The material questions are: Did the parties contract as alleged by Gillis? If so, did Estroff then breach the contract as alleged? And if that be found true as alleged, what amount of damage did Gillis suffer?

*Judgment reversed. Broyles, C. J., and Bloodworth, J., concur.*